# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| CHROMCRAFT REVINGTON, INC., et al.[1] | Case No. 15-10482 (KG) |
| Debtors. | (Jointly Administered) |
| | **Ref. No. 373** |

## OBJECTION OF MERCHANT FACTORS CORP. TO FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PACHULSKI STANG ZIEHL & JONES LLP, AS COUNSEL TO THE CHAPTER 7 TRUSTEE, FOR THE PERIOD FROM JULY 31, 2015 THROUGH MAY 31, 2016

Merchant Factors Corp. ("MFC"), by and through its counsel, Landis Rath & Cobb LLP and Klestadt Winters Jureller Southard & Stevens, LLP, hereby objects (the "Objection") to the First Interim Application for Compensation and Reimbursement of Pachulski Stang Ziehl & Jones LLP, as Counsel to the Chapter 7 Trustee, for the Period from July 31, 2015 through May 31, 2016 (the "PSZJ Fee Application") [Docket No. 373]. In support of its Objection, MFC respectfully states as follows:

### Preliminary Statement

MFC objects to the PSZJ Fee Application because it seeks to do an end-run around the agreed-to carveouts provided in the *Stipulation by and Between Chapter 7 Trustee for the Estates of Chromcraft Revington, Inc. and Sport Haley Holdings, Inc. and Merchant Factors Corp.* (the "Cash Collateral Stipulation") without MFC's consent or even a request for such consent. Moreover, the Trustee (defined below) breached the terms of the Cash Collateral Stipulation by failing and refusing to remit MFC's cash collateral to it.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number are: (1) Chromcraft Revington, Inc. (8904), and (2) Sport-Haley Holdings, Inc. (0885).

{1048.001-W0043045.}

Despite the Trustee's continued breach of the Cash Collateral Stipulation, and the apparent attempt to impose new terms on MFC by the PSZJ Fee Application, MFC will continue to abide by the terms it agreed to after extensive negotiations with the Trustee's counsel. MFC does not object to allowance of the fees requested by the PSZJ Fee Application, but does object to payment of any allowed fees in excess of the Carveouts[2] from MFC's cash collateral.

## Background

1. On March 5, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (this "Court") under chapter 11 of the Bankruptcy Code. The cases ("Cases") are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

2. On May 29, 2015, the Office of the United States Trustee filed a motion to convert the chapter 11 cases to chapter 7 cases [Docket No. 205].

3. On July 31, 2015 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 cases [Docket No. 250].

4. On July 31, 2015, Alfred T. Giuliano was appointed as the chapter 7 trustee (the "Trustee") [Docket No. 251].

5. On December 22, 2015, the Court entered its Order Granting Chapter 7 Trustee's Motion Pursuant to 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 4001 and 9019, and Local Rule of Bankruptcy Procedure 4001 for Entry of an Order Approving Stipulation by and between Chapter 7 Trustee for the Estates of Chromcraft Revington, Inc. and Sport Haley Holdings, Inc. and Merchant Factors Corp. (the "Cash Collateral Order"). A copy of the Cash Collateral Order is attached hereto as **Exhibit A**.

---

[2] Capitalized terms not defined herein shall have the meaning ascribed to them in the Cash Collateral Stipulation.

6. The Cash Collateral Order approved the Cash Collateral Stipulation. Relevant to the Objection, the Cash Collateral Stipulation provides as follows:

> 5. In consideration of the foregoing, MFC agrees to provide to the Debtors' estates the following carveouts (the "Carveouts") from its cash collateral: (a) $75,000 to fund the legal fees and expenses for legal professionals of the Trustee; (b) $75,000 to fund accounting fees and expenses for accounting professionals of the Trustee; (c) $75,000 as payment towards allowed claims of creditors; and (d) Trustee's commission on the proceeds of the sale of the Indiana Property pursuant to section 326 of the Bankruptcy Code....
>
> 6. The Carveouts shall be funded from the proceeds of the Indiana Property Sale.
>
> 7. Proceeds of the Indiana Property Sale, less (a) the Carveouts in paragraph 5, above; (b) brokerage commission to Hilco; and (c) reasonable, ordinary and customary closing costs and expenses shall be paid directly to MFC at the Indiana Property Closing.
>
> 8. In light of the Carveouts, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the MFC [sic] pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise.

7. On November 5, 2015, the Court entered the Order (A) Establishing Bidding Procedures for the Sale of Delphi Property, (B) Approving the Form and Manner of Notices Related Thereto, (C) Scheduling a Sale Hearing, and (D) Granting Related Relief (the "Bidding Procedures Order") [Docket No. 300]. Pursuant to the Bidding Procedures Order, the Trustee conducted an auction with respect to certain real property located in Delphi County, Indiana (the "Indiana Property") on November 16, 2015. At the conclusion of the auction, the Trustee declared Carroll County Warehousing and Logistics, LLC ("CCWL") as the winning bid at $1,350,000 and Peters Industrial Development LLC ("PID") as the backup bid at $1,275,000.

8. On November 24, 2015, the Trustee obtained Bankruptcy Court approval of the sale of the Indiana Property to CCWL [Docket No. 316]. Ultimately, CCWL did not close on the sale.

9. On February 8, 2016, the Trustee obtained Bankruptcy Court approval of the sale of the Indiana Property to PID [Docket No. 348].

10. On February 22, 2016, the sale of the Indiana Property to PID closed.

11. MFC is informed that after closing of the sale of the Indiana Property Sale to PID, the Trustee held approximately $777,538.33 (the "Cash Collateral"). See *Summary of Merchant's Collateral Receipts/Disbursements* provided by PSZJ to MFC, attached hereto as **Exhibit B** (the "Cash Collateral Summary"). As set forth in the Cash Collateral Summary, after reserving for the agreed-to Carveouts and an "Additional Requested Carveout (GMCO and PSZJ)" of $100,000 (which MFC *never* agreed to, and, other than appearing in the Cash Collateral Summary, was never again even raised by the Trustee or PSZJ), the Cash Collateral amounted to $340,647.70. As such, the Trustee is believed to be holding not less than $440,647.70 of MFC's cash collateral.

12. Notwithstanding the clear terms of the Cash Collateral Stipulation that proceeds of the sale of the Indiana Property net of the Carveouts be remitted to MFC at closing, and despite the closing of the sale of the Indiana Property more than five (5) months ago, the Trustee has not remitted *any* Cash Collateral to MFC. The Trustee is therefore in violation of the Cash Collateral Stipulation and the Cash Collateral Order. There is no justifiable (or even stated) reason for the Trustee's failure to comply with the Cash Collateral Order[3].

---

[3] This is so despite multiple inquiries by MFC, most recently by emails dated June 1, 2016 and July 15, 2016 directly by MFC to the Trustee, which have not been responded to. These emails are attached hereto as **Exhibit C** and **D**, respectively.

13. The only conceivable reason for the Trustee's failure to remit the Cash Collateral to MFC is to hold it hostage in an effort to impose new terms to the Cash Collateral Stipulation[4].

**OBJECTION**

14. By the PSZJ Fee Application, Pachulski Stang Ziehl & Jones LLP ("PSZJ") seeks allowance and payment of $135,208.50 in fees and $12,779.91 in expenses, for a total of $147,988.41 (the "Fee and Expense Request"). The Fee and Expense Request is nearly *twice* the agreed-to carveout for legal professionals of the Trustee. Moreover, MFC does not consent to use of its Cash Collateral to pay any portion of the Fee and Expense Request that exceed the Carveouts. Finally, by the Cash Collateral Stipulation, the Trustee waived the right to surcharge MFC's collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise.

15. Despite the Trustee's continued non-compliance with the Cash Collateral Order, MFC will honor the agreements it made in the Cash Collateral Stipulation, and authorizes the payment of up to $75,000 from its Cash Collateral toward the Fee and Expense Request, conditioned upon the Trustee's compliance with the Cash Collateral Order and remitting all Cash Collateral net of the agreed Carveouts to MFC.

16. Moreover, the Bankruptcy Court should enforce the Cash Collateral Order and require the Trustee's immediate compliance with it. It is beyond dispute that the Bankruptcy Court has the authority to do so. See *In re Tribune Co.*, 464 B.R. 126 (Bankr. D.Del. 2011), fn 63: "[t]he Supreme Court has recognized that a 'Bankruptcy Court plainly ha[s] jurisdiction to interpret and enforce its own prior order,' quoting *Travelers Indemnity Co. v. Bailey,* 557 U.S.

---

[4] MFC notes that paragraph 10 of the Cash Collateral Stipulation provides: "[t]o the extent the amount of the Carveouts in 6(a) and (b) [sic] are not sufficient, MFC and the Trustee will engage in good faith discussions as to increased amounts." MFC does not consider the Trustee's failure to remit *any* of the Cash Collateral without reason, the failure to respond to multiple inquiries regarding the remittance of the Cash Collateral, or the filing of the PSZJ Fee Application without any prior notice to constitute "good faith discussions."

137, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009). As stated above, there is no legitimate reason for the Trustee to not remit MFC's Cash Collateral, net of the Carveouts, to MFC, and failure to do so, even if there was a legitimate reason, is in violation of the Cash Collateral Order.

**WHEREFORE**, MFC respectfully requests that an order be entered: (a) authorizing payment on account of the allowed Fee and Expense Request _only_ up to the Carveouts provided in the Cash Collateral Stipulation, but on the condition that the Trustee simultaneously remit all Cash Collateral net of the Carveouts to MFC; (b) enforcing the Cash Collateral Order and authorizing and directing the Trustee to remit all Cash Collateral net of the Carveouts to MFC; and (c) granting such additional relief as the Court deems appropriate.

Dated: Wilmington, Delaware
July 26, 2016

LANDIS RATH & COBB LLP

_/s/_

Matthew B. McGuire (No. 4366)
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: mcguire@lrclaw.com

-and-

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Ian R. Winters
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, NY 10036
Tel: (212) 972-3000
Fax: (212) 972-2245

_Attorneys for Merchant Factors Corp._